UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:05CV-208-R

ROBIN S. KUYKENDALL                                                                             PLAINTIFF

v.

FRANCES J. KUYKENDALL, et al.                                                              DEFENDANTS

**MEMORANDUM OPINION**

Defendant Frances J. Kuykendall has moved for partial summary judgment (Dkt. # 28). Plaintiff Robin S. Kuykendall responded (Dkt. # 32), as did Defendant / Cross Defendant Christi K. Bradley (Dkt. # 33), and Frances Kuykendall replied (Dkt. Nos. 38 and 37). Robin Kuykendall also filed a "Motion to Retain Life Insurance Proceeds in Court Treasury" (Dkt. # 35), to which Frances Kuykendall responded (Dkt. # 39), and these matters are now ripe for decision. For the reasons given below, Frances Kuykendall's motion for partial summary judgment will be **GRANTED**. Robin Kuykendall's motion seeking to retain the life insurance proceeds in the court treasury will be **DENIED**.

**BACKGROUND**

This case arises out of a dispute over the disposition of the estate of Raymond Kuykendall, father of Plaintiff Robin Kuykendall and Defendant Christi Bradley. At the time of his death, on August 18, 2005, Raymond Kuykendall was married to Frances Kuykendall; they had been married since September of 2002. Approximately one year before their marriage, on August 16, 2001, Raymond Kuykendall had purchased an insurance policy which included coverage for accidental death from Stonebridge Insurance Company. The issue of who is entitled to receive the proceeds of this policy is the subject of the instant motion. By March 9,

2006 Order of the Court (Dkt. # 23), the proceeds of the policy were deposited into the Court registry to be disbursed in accordance with the Court's findings in the case. Frances Kuykendall now seeks summary judgment alloting to her the proceeds of the policy; both Robin Kuykendall and Christi Bradley dispute her entitlement thereto.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d

1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

Frances Kuykendall's motion rests on the "Beneficiary" provision of the policy at issue, which provides:

> All benefits will be paid to you, if living. Unless you specify otherwise, any other benefit due for Loss of Life will be paid as follows:
>     1. At your death, it will be paid to your spouse, if living; otherwise, equally to your then living lawful children, if any, (including step-children and adopted children); otherwise, equally to your then living parents or parent; otherwise to your estate. [...]
> The beneficiaries designated may be changed in accordance with the Change of Beneficiary Provision, subject to the community property laws in your state of residence.

(Dkt. # 20, Attachment 3, at 5). The "Change of Beneficiary" provision states that:

> You may change the beneficiary at any time by writing to us at 2700 West Plano Parkway, Plano, Texas, 75075 or to the Policyholder. Once we record the change, it will take effect as of the day you signed the request, subject to any claim payment made before such recording. The consent of the beneficiary is not needed for the change, unless the beneficiary designation was irrevocable.

(*Id.* at 6). There is no evidence to suggest that Raymond Kuykendall ever designated or attempted to designate a beneficiary of the policy, or to change such a designation. Christi Bradley's response argues that an antenuptial agreement signed by Frances Kuykendall and Raymond Kuykendall bars Frances Kuykendall from seeking the proceeds of the policy. Robin Kuykendall's response argues essentially that *because* Raymond Kuykendall did not seek to

change the beneficiary of the policy, it should be payable to Robin Kuykendall and Christi Bradley under the "default" provision quoted above.

**Effect of the Antenuptial Agreement**

Christi Bradley argues that the antenuptial agreement signed by Raymond and Frances Kuykendall constitutes an agreement by which Frances Kuykendall contracted away her interest in the insurance policy at issue. Christi Bradley argues that ¶¶ 1, 2 and 9, the "Separate Property," "Maintenance and Life Estate" and "Marital Dissolution" provisions, preclude summary judgment on the issue of Frances Kuykendall's entitlement to the life insurance proceeds. According to Christi Bradley, the relevant provisions are as follows:

> 1. **SEPARATE PROPERTY**. From and after the date of the marriage, which is anticipated to be September 10, 2002, each of the parties shall own separately their respective assets, both real and personal, including vehicles, boats, and motors, except as specifically set forth herein at ¶ 2, and neither shall make a claim against the other regarding any such assets owned by the other prior to the date of the marriage, except as expressly excepted by this Agreement. Except as enumerated herein at ¶ 2, the Wife shall make no claim or demand as against the Husband in any manner relating to any real or personal property he owns as of the date of the marriage and the Husband shall make no demand or claim against the Wife as to any property, real or personal, she owned prior to the date of the marriage. [...]
> 2. **MAINTENANCE AND LIFE ESTATE**. [...] It is the interest and desire of each of the parties hereto that all realty and personalty owned by each of the parties separately and not specifically excepted herein shall during the marriage remain in the control of each of the parties individually as said assets are vested at the date of the marriage. In this respect, each party is to maintain their individual estates, accounts, and assets which are not to be used or claimed by the opposite party as a matter of right. [...]
> 3. **MARITAL DISSOLUTION**. It is specifically agreed that the purpose of this Agreement is to define and limit the claims and demands which each of the parties shall have against the estate or person of the other. In addition, this Agreement further is intended to and shall limit the right of either party to claim or demand any interest in and to the estate of the other, whether the marriage relationship is terminate[d] by death or legal proceedings. Each party hereto specifically releases his or her rights in the other spouse upon the termination of the marriage by any means whatsoever. It is agreed that in the event of a

>    separation or dissolution of the marriage, neither party shall have any right as
>    against the other party by way of claims for support, alimony, attorney's fees,
>    costs or division of property.

(Dkt. # 1, Attachment 1).

In response, Frances Kuykendall argues that, even if the antenuptial agreement were upheld generally, it would not affect her right to the proceeds of the insurance policy. Although she notes that she disputes the validity of the agreement itself on other grounds, she does not seek a ruling on the overall validity of the agreement.[1] However, even assuming *arguendo* that the antenuptial agreement is valid and enforceable in this action, it still needs to be construed to determine whether or not it would impact the distribution of the insurance proceeds. The Court concludes that it would not.

The "Marital Dissolution" provision "define[s] and limit[s] the claims and demands which each of the parties shall have against the estate or person of the other" as well as "the right of either party to claim or demand any interest in and to the estate or person of the other" when the marriage is terminated. As Frances Kuykendall correctly observes, under Kentucky law "assets such as life insurance ... are not parts of the probate estate." *Hurst v. First Kentucky Trust Co.*, 560 S.W.2d 819, 821 (Ky. 1978). Therefore, the marital dissolution provision of the agreement, even if valid, has no impact on the Court's interpretation of the beneficiary provision of the insurance policy.

Christi Bradley also argues that the "Separate Property" and "Maintenance and Life Estate" provisions, paragraphs 1 and 2 of the agreement, bar Frances Kuykendall's claim to the

---

[1] The Court also expresses no opinion on whether the antenuptial agreement is enforceable against Frances Kuykendall by parties other than Raymond Kuykendall.

proceeds of the insurance policy. Although the vague language in these provisons might indicate that they could cover such a claim, general principles of contract interpretation dictate that a specific provision should prevail over a general one. *See, e.g.,* Restatement (Second) of Contracts 203(c) (1979) ("specific terms and exact terms are given greater weight than general language..."); *see also L.K. Comstock & Co., Inc. v. Becon Const. Co.*, 932 F.Supp. 948, 967 (E.D.Ky. 1994) and *American Bridge Co. of New York v. Glenmore Distilleries Co.*, 107 S.W. 279 (Ky. 1908). In the instant matter, the "Marital Dissolution" provision speaks specifically to the rights of the parties with respect to each others' property at the dissolution of the marriage, including dissolution by death of one of the spouses. Under the principle stated above, then, even if paragraphs 1 and 2 would bar Frances Kuykendall's claim to the insurance proceeds (i.e., if they conflicted with the "marital dissolution" provision as discussed *supra*), the specificity of the "Marital Dissolution" provision would outweigh those general provisions.

**Change of Beneficiary Provision**

Plaintiff Robin Kuykendall argues that Kentucky's "doctrine of substantial compliance" dictates that the policy be interpreted to provide that Frances Kuykendall is not the beneficiary of the policy. Her argument is, essentially, that because Raymond and Frances Kuykendall were not married at the time he purchased the policy, and he never effectively named Frances the beneficiary of the policy under the "Change of Beneficiary" provision, Frances may not be the beneficiary. The parties are in agreement that Raymond Kuykendall never effectively changed the beneficiary under that provision of the policy; therefore, the substantial compliance doctrine is irrelevant.

This brings the analysis back to Robin's argument that, because Raymond and Frances

were not married when he purchased the policy, the "Beneficiary" provision cannot be interpreted to entitle Frances to the proceeds of the policy. Under Kentucky law "[i]t is well settled that a designated beneficiary in a policy of insurance has no vested interest therein where the insured is authorized by the contract to change the beneficiary at his pleasure with the consent of the insurer." *National Life & Acc. Ins. Co. v. Walker*, 246 S.W.2d 139, 140 (Ky. 1952) (citing *Twyman v. Twyman*, 255 S.W. 1031 (Ky. 1923)). Therefore, at the time Raymond Kuykendall purchased the policy, his daughters had only a revocable expectancy of interest in the proceeds, which was subject to their still being the designated beneficiaries at Raymond's death. Because Raymond married between the purchase of the policy and his death, his children's interests never vested. Further, the plain language of the policy indicates that the beneficiary is to be determined at the time of the insured's death, since its payment to the insured's spouse, children or parents is contingent on those parties being living at the time of the insured's death.

Robin Kuykendall's response also contains a discussion of principles of Kentucky divorce law as well as contract law with respect to the introduction of parole evidence to discern the intent of a party to a contract. Neither of these bodies of law impact the operation of the default beneficiary designation clause in the instant case, because both address situations in which the decedent designates a beneficiary; here, Raymond Kuykendall never designated a beneficiary, as was his right under the policy. Therefore, by operation of law, the proceeds of the policy are distributed according to the default beneficiary provision of the policy. As discussed above, that provision dictates that the proceeds be paid to Raymond Kuykendall's living spouse at the time of his death. None of the arguments made by either Robin Kuykendall

or Christi Bradley raise an issue of material fact which could impact the Court's interpretation of the policy's default beneficiary provision. Therefore, summary judgment is appropriate.

**Robin Kuykendall's Motion to Attach**

Plaintiff Robin Kuykendall seeks, in the event that partial summary judgment is granted, to have the Court retain the proceeds of the insurance policy because she believes that Frances Kuykendall will not have the funds to satisfy the anticipated judgment against her in this case. Although Robin Kuykendall styles this as a "Motion to Retain," it is, as Defendant Frances Kuykendall correctly observes, in effect a motion to attach. KRS 425.301 provides as follows:

> The plaintiff may, at or after the commencement of an action, have an attachment against the property of the defendant, including garnishees, as a security for the satisfaction of such judgment as may be recovered:
>
> (1) In an action for the recovery of money against:
>     (a) A defendant who is a foreign corporation or nonresident of the state; or
>     (b) Who has been absent herefrom for four (4) months; or
>     (c) Has departed herefrom with intent to defraud his creditors; or
>     (d) Has left the county of his residence to avoid the service of a summons; or
>     (e) So conceals himself that a summons cannot be served upon him; or
>     (f) Is about to remove, or has removed, his property, or a material part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim, or the claims of said defendant's creditors; or
>     (g) Has sold, conveyed, or otherwise disposed of, his property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder or delay his creditors; or
>     (h) Is about to sell, convey, or otherwise dispose of his property, with such intent. But an attachment shall not be granted on the ground that the defendant is a foreign corporation, or a nonresident of this state, for any claim other than a debt or demand arising upon a contract, express or implied, or a judgment or award.
> (2) In an action for the recovery of money due upon a contract, judgment or award, if the defendant have no property in this state subject to execution, or not enough thereof to satisfy the plaintiff's demand, and the collection of the demand will be endangered by delay in obtaining judgment or a return of no property found;

> (3) Before an order of attachment shall issue prior to judgment, the person seeking the order must first make a demand in writing at or after the time the suit is filed, by delivering such demand and a copy of the complaint, motion and summons to the debtor or by sending them to him by registered or certified mail, return receipt requested, to his last known place of residence, at least seven (7) and not more than sixty (60) days before such order is sought. The demand shall contain a statement in substance that the debtor has seven (7) days in which to petition the court for a hearing or in which to pay the claim in full, and that unless a hearing is set or the claim paid, an order will be sought to subject his property to payment of the claim. The statement shall identify the court in which the suit has been filed, the grounds therefor, the date of the demand, the amount of the claim, and the name and address of the plaintiff and his attorney. An affidavit of the plaintiff or his attorney evidencing compliance with this section shall be filed before an order shall be issued.

Plaintiff Robin Kuykendall has neither alleged nor demonstrated that Frances Kuykendall meets the requirements of section (1) of the statute above, nor has she demonstrated that she has complied or attempted to comply with the procedural requirements of section (2). Therefore, her motion will be **DENIED**.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff Robin Kuykendall's Motion to Retain Proceeds is **DENIED**. An appropriate order shall issue.